UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.:

RONALD McKENZIE,

      Plaintiff,

v.

SWISSPORT SAUSA, LLC, a business entity,
and CHAD SWINGLE, an individual, and
MILLER de los SANTOS, an individual,

      Defendants.

_____/

## **COMPLAINT**

      Plaintiff, Ronald McKenzie ("McKenzie"), through his undersigned attorneys, files this Complaint against the Defendants, Swissport SAUSA, LLC, Chad Swingle, and Miller de los Santos (hereinafter, "Defendant"), and alleges:

## **JURISDICTION AND VENUE**

      1.     This suit is brought against the Defendant pursuant to 29 U.S.C. § 201 *et seq.* ("Fair Labor Standards Act" or "FLSA").

      2.     Jurisdiction is conferred upon this Court by:

          (a)     28 U.S.C. § 1331;

          (b)     28 U.S.C. § 1343; and

          (c)     29 U.S.C. § 216(b), which allows for a FLSA claim to be brought in any court of competent jurisdiction.

      3.     Venue is proper for the Southern District of Florida because:

(a)     McKenzie was employed in the Southern District of Florida by the corporate Defendant which at all material times conducted, and continues to conduct, business in Broward County; and

(b)     Additionally, venue lies because the acts that gave rise to Plaintiff's claims occurred in the Southern District of Florida and because the corporate Defendant keeps an office for the transaction of its customary business in this district (Adams and Associates, Inc. has an office in South Florida and the individual Defendants reside in the Southern District of Florida).

## CONDITIONS PRECEDENT/ADMINISTRATIVE EXHAUSTION

4.     Plaintiff has complied with all conditions precedent in this case, or they have been waived.

## PARTIES

5.     McKenzie resides within this judicial district.

6.     Defendant Swissport SAUSA, LLC is a business entity which, at all times material, conducted substantial and continuous business in this judicial district, and is subject to the laws of the State of Florida and the United States.  Swissport SAUSA, LLC owns and operates a business in South Florida at which for all material times McKenzie worked for and his labor benefited.

7.     The corporate Defendant paid employees and paid McKenzie (through the individual Defendants) and has gross annual sales volume that greatly exceeds $500,000 annually, at least for years 2018-21.  The corporate Defendant has two or more employees engaged in commerce, as they have two or more employees who handle, work on, and use goods or materials that have been moved in interstate commerce and/or manufactured outside the state of Florida.  For example, in the South Florida location Defendant has at least 15 employees two or more who use computers, computer software, office supplies, copiers which were manufactured outside the State of Florida (and thus have moved in interstate commerce—including massive air cargo that its agents handle including

2

McKenzie that was in fact moving across state lines), and use cars and vehicles that in turn use gasoline, which vehicles, boats, and gasoline were manufactured outside the State of Florida.  Further, the Defendant has various employees make long distance phone calls (suppliers, internet purchases, and others) and sent emails to individuals who reside out of the State of Florida regularly and recurrently to effectively communicate for the businesses to operate.

8.      Additionally, McKenzie is entitled to individual coverage, as he regularly and recurrently participated in the actual movements of goods or services and commerce across state lines (cargo).

9.      Individual Defendants Swingle and de los Santos are high-level managers of the corporate Defendant and operate it day-to-day and have operational control over the corporate Defendant deciding all financial decisions and having say over numerous employees and directing their work day-to-day, including how much they would be paid and when they would be paid, as the individual Defendants had the power the hire and fire, daily managed the company and were ultimately responsible for the profitability of the business—they terminated McKenzie.  Concerning McKenzie, Defendants Swingle and de los Santos hired her, told her what to do day-to-day, determined how much and whether she would be paid (pay did not include overtime and she was required to work off of the clock and not overtime hours), and McKenzie had to follow the individual Defendants' orders.

10.     The corporate Defendant is an "employer" pursuant to 29 U.S.C. § 203(d) of the Fair Labor Standards Act, and so too is the individual Defendant.

11.     The corporate Defendant is an "enterprise" pursuant to 29 U.S.C. § 203(r) of the Fair Labor Standards Act.

12.     The corporate Defendant is an enterprise "engaged in commerce" pursuant to 29 U.S.C. § 203(s) of the Fair Labor Standards Act.  During all times relevant to this action, the corporate Defendant was an enterprise engaged in commerce as defined in 29 U.S.C. §§ 203(r) and 203(s).

13.     McKenzie was an "employee" pursuant to 29 U.S.C. § 203(e)(1) of the Fair Labor Standards Act.

14.     McKenzie was a non-exempt employee of Defendant who was subject to the payroll practices and procedures described in Paragraphs 23, 24, and 25 below, and who worked in excess of forty (40) hours during one or more workweeks within three (3) years of the filing of this Complaint. At all times pertinent to this Complaint, Defendant failed to comply with 29 U.S.C. §§ 201-219 in that McKenzie performed services for Defendant for which no provision was made to properly pay for those hours in which overtime was required to be paid, which requires the payment of wages at time and one-half for all hours worked in excess of forty (40) hours in each workweek.

## STATEMENT OF FACTS

15.     Within the past three (3) years (January 2019 to November 2019), McKenzie worked for the Defendant performing various duties.  McKenzie worked under the title "laborer", which duties included solely performing manual labor, and his compensation was hourly.

16.     McKenzie's duties included doing whatever task the Defendant instructed him to perform, which varied depending the time (but primarily consisted of cargo-related duties and other assigned manual labor work to perform).

17.     McKenzie did not have the ability to hire or fire anyone (nor did he hire or fire anyone), and he did not regularly and customarily direct the work of any employees, much less two or more full-time workers during all material times.

18.     McKenzie was only given tasks that were designed to facilitate production work of the Defendant, such as the tasks described above, all of which consisted of regular, recurrent, and

routine work that did not involve her exercising independent judgment and discretion on matters of significance.

19.     McKenzie's primary duties were not management.

20.     During McKenzie's employment, McKenzie did not have any authority to interview, select, and/or train employees.  McKenzie did not have any authority to set and adjust the rates of pay and hours of work for any employees.  McKenzie had no authority to direct the work of employees.  McKenzie did not maintain production or sales records at all when he worked for the Defendant, nor did he use any such records to supervise or control any employee.  In fact, McKenzie knows little about the business's financing or financial success or failure.  The finances were not his responsibility.  McKenzie did not supervise any staff.  McKenzie had absolutely no say concerning any of the costs.  For example, concerning wages paid to employees, McKenzie had no say concerning what any particular employee would be paid, how many employees could work in the buildings, when, what hours they could work, whether their pay should be increased or decreased, as all of that was determined by the Defendants.  McKenzie had no authority to spend any of the Defendant's money at all, and had no authority to authorize the payment of bills.  McKenzie never opened up any mail that came to the building for purposes of making any decision concerning the business with respect to that mail.

21.     While McKenzie worked for the Defendants, he never appraised employees' productivity and/or efficiency for the purpose of recommending promotions or other changes in status.  While McKenzie worked for the Defendants, he never handled employee complaints and grievances, as that was for the Defendants to do.  Also, McKenzie never disciplined employees, nor did she have the power or authority to do that.  McKenzie did not plan any work for any employee, as there was no work to plan.  McKenzie never determined any techniques to be used by employees to do their job.  McKenzie never apportioned work among any employees, as there

were no employees who reported to him to whom to apportion work. McKenzie never determined the type of materials, supplies, machinery, equipment, or tools to be used by any employees, as the Defendants or the employees themselves decided all of that. McKenzie had no involvement in controlling the flow and distribution of materials or merchandise and supplies. McKenzie had nothing whatsoever to do with materials, merchandise, or supplies or their distribution. McKenzie had no involvement with respect to budgeting. McKenzie was not involved in reviewing any sort of financial documents or statements of the buildings, and she did not review any such documents, nor was McKenzie supposed to. McKenzie had no involvement in monitoring or implementing legal compliance measures. There were no legal issues that McKenzie had anything to do with in terms of deciding how they would be handled or dealt with while she worked for Defendant, nor did she have anything to do with paperwork concerning new employees or hires. McKenzie simply followed the established techniques and procedures with respect to his duties, all of which were repetitive, routine, and recurrent work.

22.     McKenzie did not do anything that could have resulted in financial losses for the Defendants. McKenzie did not perform work that was directly related to management or general business operations of Defendants or their customers, because McKenzie did not perform work directly related to assisting with the running or servicing of the business, but rather was engaging in production work (manual labor in the cafeteria and other manual tasks, and work arising out of that, communications with other workers). McKenzie also did not perform work directly related to the management or general business operations of the Defendants because McKenzie did not work in a functional area such as tax; finance; accounting; budgeting; auditing; insurance; quality control; purchasing; procurement; advertising; marketing; research; safety and health; personnel management; human resources; employee benefits; labor relations; public relations, government relations; computer network, internet and database administration; legal and regulatory

compliance; and similar activities.  Rather, McKenzie was one more person looking to perform production work the Defendants rely on so heavily, assist with the production work of getting children fed.

23.     In the course of employment with Defendant, McKenzie worked the number of hours required of him, but were not paid time and one-half for all hours worked in excess of forty (40) during a workweek.

24.     McKenzie regularly worked in excess of forty (40) hours per workweek, but was not paid for lunch time though he worked through it and was not completely relieved of duty and tried to put more than 40 hours on his time sheets but was told by the individual Defendants he would not be paid for the hour lunch time during which he was not completely relieved of duty and working.  For example, the Defendant had a policy in which McKenzie was scheduled to work full time, with 1 hour supposedly being for a break, so the hours worked and paid for appeared to be 40 in a workweek.  However, the Defendant did not allow McKenzie to take the 1-hour break, but made him clock out and continue to work, and he was thus precluded from putting on his timesheet the true accurate number of hours that he was working, which (approximately 5-6 per week).  Thus, for each week, and McKenzie generally worked 5-6 days per week, McKenzie was required to work 5-6 hours for which he was not compensated. McKenzie  complained  about  this  to  the individual Defendants and others.  Thus, all of his timesheets indicate that he had taken 5-6 hours for a "lunch/meal" break, but in reality no break was taken, and the Defendants knew it.

25.     The Defendant should have partial accurate records of hours worked, because he filled out the timesheets as indicated above.

26.     McKenzie has retained the undersigned legal counsel to prosecute this action in his behalf, and has agreed to pay them a reasonable fee for their services.

27.     McKenzie is entitled to his reasonable attorneys' fees for prosecuting this action, whether or not he is the prevailing party.

## COUNT I – RECOVERY OF OVERTIME COMPENSATION

28.     McKenzie re-adopts, incorporates by reference, and re-alleges Paragraphs 1 through 27 above as though fully set forth.

29.     McKenzie is entitled to be paid time and one-half for each hour worked in excess of forty (40) in each workweek.

30.     By reason of the intentional, willful, and unlawful acts of Defendant, McKenzie has suffered damages, *e.g.*, back pay for overtime wages, liquidated damages, and compensatory damages, plus incurring costs and reasonable attorneys' fees.

31.     As a result of the Defendant's willful violations of the Act, and the failure to pay overtime which was not in good faith, as discussed above, McKenzie is entitled to liquidated damages as provided in § 216 of the FLSA, and is entitled to recover damages for three (3) years.

WHEREFORE, for workweeks within three (3) years of the filing of this Complaint, McKenzie demands judgment against Defendants for the wages and overtime payments due him for the hours worked by him for which he has not been properly compensated (back pay), liquidated damages, reasonable attorneys' fees and costs of suit, and for all proper relief including pre-judgment interest, and any further relief that the Court deems necessary.

## **DEMAND FOR TRIAL BY JURY**

Plaintiffs demand trial by jury on all issues and all counts of this Complaint so triable as a

matter of right.

Dated:   __January 11, 2022_____

Respectfully submitted,

By:  /s/ *Chris Kleppin*
        Chris Kleppin
        Fla. Bar No. 625485
        ckleppin@gkemploymentlaw.com
        The Kleppin Firm, P.A.
        *Attorneys for Plaintiffs*
        8751 W. Broward Boulevard
        Suite 105
        Plantation, FL 33324
        Tel: (954) 424-1933
        Fax: (954) 474-7405
Secondary E-Mails: assistant@gkemploymentlaw.com